If it pleases the court, my name is Michael Bigelow and I represent Petitioner in this matter, Joshua Phillips, and Your Honor, we're glad. I guess what the Ninth Circuit gives us, the Supreme Court takes away. Wharton. I'm sorry? Well, Wharton v. Bockting. Yes, Bockting. Yes, exactly. I'm not sure really where the court wishes me to begin. It's your case. I'm sorry? It's your case. All right. What's left? I'm sorry? What's left? Well, I think we get to exactly the same place. I guess we might have to go back and the court may wish to remand, which would be my choice, back to district court for an evidentiary hearing. That may be wishful thinking on my part. I do believe we get to the same place.  Your Honor, I don't think it would be bad. I wouldn't get so close. Then in the absence of an indicative reliability, cross-examination is required. The 1360 requires something else, which youCHEERING cross-examination isn't required, because I understand that the opportunity for meaningful cross-examination is required. If you're right, the opportunity for meaningful cross-examination is required. Meaningful. That's the way I read it. I understand the magistrate, judge, and that's why the procedural bar isn't applicable, because the State court, the appellate court all operated under the assumption that, okay, these young ladies, girls, are going to testify, and therefore, the Sixth Amendment's not implicated if we have cross-examination. Am I right there was no objection along the lines that you're now tendering? I mean, all counsel finally did at the end of the day after being told what was going to happen was reserve the right to object under 352. No, Your Honor. I don't believe that is the case. I think that he did make an objection, although it was ineffectual. Not ineffectual. It was not articulated well. Not articulated at all. I mean, after all. Well, he does say, I would like to object on consultation grounds. He says that at the very beginning. Then what happened. Go ahead. Then what happens is the prosecutor says, well, hey, the girls are going to testify. Right. Well, okay. So nobody's thinking in terms of confrontation clause. But then later on he says, I would ask for a stipulation the objections rendered here on the basis rendered here to incorporate in every case confrontation be deemed made contemporaneously with the tapes being played to the jury. Those are his words. They're not mine. I mean, but he says as the tapes are being played, I've got a confrontation clause problem. I can't cross-examine. Now, it's a presage to the fact that when the girls testify, he can't ask them any questions. And Davis says you got more you got the right to do more than confront a lump. Why can't he ask them any questions? He did that with one. He with one he turned his back essentially and said she is too young. He can't ask questions. But he wasn't precluded by any law or ruling of the court from asking questions. He was precluded by common sense and science. Well, trying to turn common sense and science into a constitutional issue is going to be tricky. Well, but let's back this up one step further. They get an MDIC from a one-year-old. They get an MDIC from a six-month-old who performs with the anatomical dolls and gives all the information that would be necessary. You can't cross-examine a post. And I'm not likening these young girls to posts. But I guess I am. But the point is they were two years old. They were three years old. I've got a grandson who's two years old who can't remember from he's got a very good memory, but two years from now he's not going to remember what his grandfather. So now I hear you arguing that calling a young witness who may not be qualified to testify is a confrontation clause violation. Your Honor, I'm sorry. The first words I didn't hear. I apologize. Well, now I hear you saying that it's a constitutional violation to call a young witness who a lawyer is going to have trouble cross-examining. If the sole purpose of calling that young witness, if it's a pretext to the admissibility of a previous statement, let me get back to 1360. I mean, did you make this argument anywhere before today? Yes. Well, in my open brief. But, I mean, in the state, was it made in the state court? Was it made in the district court? In the district court in my. Well, yes. The short answer is yes, but not in the state court. I was not in the state court. I was, I wasn't involved in the state court. I came in in the, I came in and. See, that's the problem. These cases, quote, get better, close quotes, as they proceed through the system. Yeah. But, yes, I did make this same argument to no avail to the magistrate judgment to the district court, or it was affirmed by the district court at least. But the 1360 requires, among other things, if they wouldn't, if the NDIC tape or the previous statement is going to be used without benefit of cross-examination, requires independent corroboration. The statute, excuse me, the statute says that the child either testifies at the proceeding,  And the child testifies at the proceeding. Well, these girls were all called, but solely as a pretext, because everybody knew that they couldn't get any information out of them on cross-examination. I mean, that's a given. Well, but they could, excuse me, they couldn't get any information out of them on cross-examination, according to you. How long was their direct testimony? Well, that's a good question, Your Honor. And I don't. My impression is that they, you know, they didn't just get up on the stand and say, my name is Mary and sit down. That was pretty, if I recall correctly, that was pretty much it. I could be wrong, but on cross-examination, they didn't remember, they couldn't identify Petitioner. They couldn't remember who or when things occurred. There was, in the Sabrina case, Detective Osborne says specifically, he says, I didn't go through the MDIC because I didn't think that she could tell us the story without her mother being present to help her. That's what he says. Now, under that, theoretically, we get, you know, reliability. I don't have the answer to the Court's question, and I apologize. But 1360 requires corroboration. Now, this particular argument was not made below because Crawford was the issue below, and it didn't seem to be necessary to make it below under Crawford. But if we're going to use 1360 and Roberts as the predicate for the admissibility of all of this, then it seems to me that if we're not going to cross-examine, which is my premise, that you can't cross-examine a 4-year-old child about things that happened 2 years earlier. You can't cross-examine a 6-year-old child about things that happened when it was 4. Now, maybe as we move up the ladder, we have a 12-year-old who testified, okay. But science tells us, medicine tells us that these witnesses, Davis says the main essential purpose of confrontation is not for the idle purpose of gazing upon the witness or being gazed upon by him, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers. That's what Davis says. You can't do that with a 4-year-old. Now, I grant you I've got to get past the procedural bar. Well, I don't concede that. Go ahead. I'm sorry, your Honor. I just was agreeing with you. Agreeing with you, had to get by the procedural. I was agreeing with you, you have to get past the procedural bar. Yes. But one of the other reasons this should not be barred is that any, any further objection by counsel, even if he'd been able to state it, would have been futile. Because he's confronted by a prosecutor who correctly so says, confrontation's not a problem. It's the same thing, the other question, confrontation's not a problem. The girls are going to testify. So confrontation isn't really something that the trial court is going to reject the MDIC testimony on. The appellate court said the girls testified. Confrontation's not the problem. The magistrate judge, the district court said confrontation's not the problem. The girls testified. So to have made that objection at trial, to have made that objection at trial would have been perfectly futile. You know, I wrote an opinion saying that 10 years ago and the Supreme Court dumped a load of bricks on my head. They said stop making excuses for lawyers who don't make objections. They either make them or they don't. And if they don't, they suffer the consequences. I wrote an opinion saying exactly what you just said. Faced with a solid wall of authority, it's futile for a lawyer to make an objection. We're not going to hold it against him. Supreme Court said wrong. I don't mind not holding it. I don't mind holding it against the lawyer. It's the client who suffers. It's not the lawyer. I don't understand, since the Court brought it up, I don't understand why prosecutors don't have to make objections or offer evidence under certain theories, yet courts have absolutely no trouble at all. California State courts, Your Honor, have no trouble at all saying, well, the judge would have ruled. Yeah, we're not the California courts. You're off on that. I understand that. We agree, but on different terms, I guess. We could try again. Thank you. I have seven minutes, seven and a half minutes left. And I appreciate the courtesy of the Court. We'll let the other side argue and then you can respond. Thank you, Your Honor. Good morning, Your Honor. Deputy Attorney General Pat Whalen, for Respondent. Briefly, in response to Your Honor's question, just as one example, one of the girls, Amanda W., testified on direct for about 11 pages. She was cross-examined for 14 pages and then a redirect of one page. That's it. Supplemental excerpts record 182 to 211. What about S.R.? S.R.'s examination was briefer because she was one who didn't remember anything. Anything. Either didn't remember or in denial, I suppose, but in any event offered no substantive testimony against the petitioner or the appellant. With respect to the procedural bar, there just hasn't been any showing of cause and prejudice to get around it, and the notion that it would have been futile to object, I think, is rebutted by the State court record because the State court's imposition of the procedural default was based on the lack of a specific and articulating objection. Had he made the correct objection, the State court may well have found the issue preserved. Moreover, even if we assume for a moment that it was futile in the trial court to make the objection, there's no reason that the State court wouldn't say, well, the trial court was wrong. He did make the correct objection. That didn't happen here. So there's simply no cause or prejudice to get around the procedural bar. But even if we were to go to the merits, as this Court indicated at the outset, there simply is no confrontation clause issue. Even before Wharton v. Bochting, any rule prohibiting the testimony of child witnesses simply because they are young would have been Teague-barred after Wharton. That's even more clear. In any event, in light of California v. Green from the United States Supreme Court, there certainly is no clearly established United States Supreme Court precedent saying that child witnesses who are available for prosecution cannot testify and cannot have their prior statements admitted. And just briefly with Petitioners, on the competence issue of the child witnesses, I would like to point out something that really wasn't addressed in the briefs. Each of the witnesses, each of the younger witnesses, I should say, the five youngest girls who testified, at the beginning of each direct, the prosecutor went through the standard competency foundation. He'd ask them questions like, do you know what you're supposed to do? Yes, I'm supposed to tell the truth. Do you know the difference between a truth and a lie? Yes. And then he'd ask them questions. He'd say, well, if I told you that you're sitting in a chair right now, is that true or a lie? And they would say, oh, that's true. And he said, what if I told you you're sitting at the circus right now? They'd say, oh, that's a lie. So all of the witnesses were given that kind of competency foundation. It was before the jury and before the trial court. The exception, of course, was C.G. and Tanisha T. They were both 13 and 14 at the time of trial, so they weren't really the standard young child witness, and so they simply took the oath and their credibility was on display for the jury. So this notion that as a matter of law, we should exclude the testimony of child witnesses is really rebutted by the facts in this case because their competence was amply demonstrated by that little preamble that went on with respect to all of the younger witnesses. As to the last claim, the sufficiency of the evidence claims as to Amanda and Sabrina, the fact is, as to Amanda, he confessed, and as to Sabrina, the circumstantial evidence was quite strong. She was in the homes at the same time as some of the other girls, so he had access to her. She named him by his first name, Josh, as someone who had touched her. And she mentioned playing the, quote, thumb-in-the-butt game, which was consistent with his admissions to the police, that he had anally penetrated the girls. So it was a fairly strong circumstantial case, and certainly it would not be unreasonable for the California State Court to conclude under Jackson v. that a rational jury could find, based on that evidence, that he was guilty. Unless there's any other questions, I'll submit to that. I've got a couple of questions that are really off to one side, and that is, we've got 122 years consecutive. This is a functional life in prison without possibility of parole? For all intents and purposes, yes. And this guy is 5'3"? I beg your pardon? And this guy is 5'3"? Am I correct? 5'4"? 5'3"? Oh, I don't recall, Your Honor. I don't believe he was a particularly large man, yeah. I mean, is he still alive in prison? We normally get advised by the warden when a pending case is mooted by— Well, no, it's really a slightly different question. It really is. People with these kinds of offenses are very badly treated in prison. This is a very slight, small individual. What I'm after is, I do not wish to minimize the crimes here. They're serious and they're dreadful. But for you guys to get a life in prison without possibility of parole for this, when I look at other crimes, violent deaths and various things, this sentence seems to me out of the range. There are a lot of crimes that I think are a lot worse, that you see punishments that are a lot less. What's going on here? This is not a question legally in front of us. I understand that. Right. The California legislature, not unlike states across the country, takes sex offenses against young children very seriously and imposes harsh sentences when those are committed. The wisdom of the sentencing scheme for this offense versus the universe of other offenses is really for the state legislature. And the prosecutor has no control over the length of the sentence or degree of charging in these cases? The prosecutor, of course, has wide discretion in charging. With California's sex laws, there are— Do you know what the recommendation for sentencing from the prosecutor was? I don't. I'm just asking. I don't recall that, Your Honor. But what I was going to say was that the discretion is limited often in sex cases. Similar to California's three strikes law, some sentences are mandatory and even mandatorily consecutive. So to a certain extent, once the charging decision is made, some parts of the prosecutorial discretion is eliminated by statute. Thank you, counsel. Thank you, Your Honor. I don't think it's my argument that competency should be determined as a matter of law. That's a matter of statute. But the questions, if I recall correctly, and again, I don't have the specific answer to the Court's question, but on direct examination, the questions put to the witness are foundational kinds of questions. But as to the specifics of the event, I don't believe that there were questions with respect to the specific event, because they couldn't have gotten answers. That's the pretext that I'm speaking of. But the question, it seems to me, is competent when? The 2-year-old would not have been competent to testify in a court of law. I think that there may be a California case that has recognized competence, but these witnesses were not put to that test at the trial court. They were not put to that test by cross-examination. They were not permitted to be cross-examined when they were 2 years old, when they made the statements that were presented to the jury. And that's my argument. That's my gripe. That's what I tried to present. Do you want me to speak to the last point? If you like. He's 5'3", weighs about 115 pounds. Turn him sideways, he looks like a zipper if he sticks out his tongue. In fairness to California Department of Corrections, they do their best to protect him. I've actually met with him. He's not having it easy, and it is, it's a life sentence for him. The line prosecutor who prosecutes the case moves up the ranks to a unit called SACA, sexual something or another, something or another. It's an honor to be in that section, and they prosecute pretty much everything to the max. They give no quarter. I have a lot of, I have a, I take exception to a number of things that the trial counsel did in this case. He's a Sacramento County public defender, but I do know that he works extremely hard to resolve his cases. If an offer had been made that had been reasonable, whatever that means, presented to him, he would have taken it. The court asked the question, and my immediate response was, the court asked, why do they do this? They do it because they can, and that's the only thing. That's, they make their bones by doing it.  Thank you. Thank you, Your Honor. Case just argued is ordered and submitted. We thank you both.
judges: Schroeder, Trott, W. Fletcher